[Civ. No. 55977. Second Dist., Div. Three. Mar. 10, 1980.]

GEORGE DEUKMEJIAN, as Attorney General, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
KAPLAN, LIVINGSTON, GOODWIN, BERKOWITZ & SELVIN,
Real Party in Interest.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Marjory Winston Parker, Assistant Attorney General, Alexander W. Kirkpatrick and Gary R. Hahn, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Irell & Manella, Robert L. Winslow, Gregory R. Smith and David A. Seeley for Real Party in Interest.

Smaltz & Neelley, Gregory A. Wedner, Judith K. Otamura, Latham & Watkins, Hugh Steven Wilson, Donald L. Cornwell, Barry Tarlow, Thomas V. Johnston, Herbert M. Rosenthal, Robert M. Sweet, Truitt A. Richey and Marie M. Moffat as Amici Curiae on behalf of Real Party in Interest.

OPINION

KLEIN, P. J.—Petitioner, George Deukmejian, Attorney General of the State of California (AG), seeks a peremptory writ of mandate to compel respondent Superior Court of Los Angeles County (trial court) to vacate its order granting the motion of real party in interest, the law offices of Kaplan, Livingston, Goodwin, Berkowitz & Selvin (KLGBS) for a preliminary injunction.

KLGBS is the plaintiff in the action[1] entitled "KAPLAN, LIVINGSTON, GOODWIN, BERKOWITZ & SELVIN, a partnership, Plaintiff, v. STATE OF CALIFORNIA; GEORGE "DUKE" DEUKMEJIAN, Attorney General of the State of California; and, THE MUNICIPAL COURT FOR THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, Defendants," case number C 277 290, which seeks injunctive relief enjoining the AG and his agents from executing a search warrant issued by the Los Angeles Municipal Court (Municipal Court), for the search of the law offices, files and records of KLGBS, and from seeking issuance of any other warrant for the said location, pending trial of the matter.

The trial court granted the preliminary injunction as prayed, and added another provision restraining the AG from conducting any search of the offices, files and records of KLGBS, expressing grave concern about the "overbreadth" of the search warrant, and with the "roving commission" manner in which the warrant was to be enforced.

This court issued an alternative writ ordering the trial court to vacate the preliminary injunction, or to make certain modifications or to show cause why a peremptory writ of mandate ordering compliance should not issue.

KLGBS filed a return to the petition by way of demurrer and answer.

This court accepted three amicus curiae briefs filed in support of KLGBS.

FACTUAL BACKGROUND

In connection with an ongoing multimillion dollar Medi-Cal fraud investigation of Edward Rubin, M.D., doing business as Spectro Health Services, Inc., and related entities, agents of the AG applied for a search warrant for a number of locations seeking documentary evidence of criminal activity. On March 19, 1979, a warrant was issued by the municipal court commanding the search of the law offices of KLGBS, and other locations.

The search warrant permitted the search of "[t]he multi-story building...including all rooms, lofts, attics, basements, desks, closets, filing

---

[1]Pursuant to previous notice given the parties and rule 12(a) of the California Rules of Court, this court has taken judicial notice of the superior court file in said action.

cabinets, safes, vaults, and all parts therein...storage areas, garages, and outbuildings...for [inter alia] [r]ecords...[of] Spectro Health Services, Dr. Edward Rubin and...entities...including...all ledgers, log books, invoices, work papers, bank statements, cashed checks, payroll records, purchases journals, check registers, monthly census summaries...all licenses, contracts, employment contracts, hospital sales or escrow agreements, memorandums, letters, indemnification agreements, notes or other documents indicating transactions and/or contracts between Spectro, its hospitals and related entities...and corporate officers, attorneys, Certified Public Accountants (CPA's), employees and other individuals...."

The warrant allowed the search for records covering a five-year period. It referred to four attachments containing nine pages with over seventy related entities, persons and documents.

The warrant was served upon KLGBS at approximately 9 a.m. on March 21, 1979. During the three-hour plus course of execution, three agents and a deputy AG were on the premises. Attorneys and employees of the law offices were retained in a reception area during part of the search.

At about 3 p.m., the same afternoon KLGBS applied for and obtained from the trial court a temporary restraining order restraining the AG and its agents from executing the search warrant at KLGBS, and from seeking the issuance of any other warrant for the search of the law offices of KLGBS, and from conducting any search of their law offices. The temporary restraining order was followed by the granting of the preliminary injunction to the same effect some three weeks later.

The AG's agents complied with the trial court's order, ceased their search, and left the premises of KLGBS without taking any property. They did not seek any other warrant to search the premises.

Following the granting of the preliminary injunction, the AG filed a notice of appeal, and sought the peremptory writ of mandate.

## CONTENTIONS

The AG prays for the alternative writ to issue claiming that the trial court exceeded its jurisdiction in granting the preliminary injunction in

that equity cannot restrain a warrant valid on its face, and that KLGBS must pursue its remedies at law. He attacks the preliminary injunction as having been issued on the impermissible assumption that attorneys as a class are exempt from searches for evidence of criminal activity.

KLGBS counters, maintaining the trial court acted within its jurisdiction and that they have no adequate remedy at law, that the writ should be summarily denied because the AG has failed to demonstrate the inadequacy of its remedy by appeal or otherwise, and that the warrant was unconstitutionally overbroad.

Amici curiae, the State Bar of California, Beverly Hills Bar Association, and California Attorneys for Criminal Justice, urge that the search warrant as proposed by the AG is inherently unreasonable in that its execution would violate the attorney-client privilege, the work-product privilege, the constitutional right to privacy, and the rights of clients to effective representation by counsel. They further advocate that the preliminary injunction must be upheld because the only reasonable means of obtaining documents sought in this case is by subpoena duces tecum.

For the reasons hereinafter discussed, we determine that a peremptory writ of mandate shall issue, directing that the trial court vacate the order granting the preliminary injunction in Superior Court of Los Angeles County case number C277 290.

DISCUSSION

At the time this court granted the alternative writ of mandate, namely May 8, 1979, the fact situation herein signaled many delicate and complex legal problems of considerable significance, attested to by the number and volume of briefs filed for our edification.

There was presented the basic question as to whether the search warrant was "too broad" in its scope and manner of execution, and if so, what remedy, if any, was available to nonsuspect KLGBS. Next, a judge sitting in the writs and receivers department of the Los Angeles County Superior Court, laudably concerned about maintaining the integrity of attorneys' files and fashioning a remedy, granted a temporary restraining order and a preliminary injunction in very broad terms, in

effect preventing the AG from conducting any search at the location of the law offices of KLGBS.

Faced with this impasse, this court issued an alternative writ and suggested a compromise solution which called for cooperation among the trial court, the AG and KLBGS. We then recognized the many seemingly insoluble issues to be resolved in the event our order was rejected, issues more appropriately within the domain of the Legislature. Some seven months have now elapsed since the granting of the alternative writ.

The fact that the search warrant in question is now void since it was not executed within 10 days after the date of issuance (Pen. Code, § 1534) does not render this matter moot because the existing injunction has caused a stalemate.

Fortunately, the stalemated situation came before the California Legislature in April 1979, when as an outgrowth of the fact situation herein, attorneys sought legislation to protect the confidentiality of their files. By virtue of the adoption of resulting legislation, much of our burden as an appellate court has been relieved.

In recognition of the valid and sometimes crucial role search warrants serve in the continuing struggle against sophisticated white-collar crime and the basic need to protect privileged material in the possession of attorneys, among others, and by compromising and balancing these strong competing societal interests, the Legislature filled the existing void with procedural protections.

The Legislature's vanguard efforts are reflected in significant amendments to the statutory scheme governing search warrants, found in Penal Code sections 1523 to 1542, and to the Evidence Code section dealing with privileges.

Effective January 1, 1980, and as amended, Penal Code section 1524 now provides for specified procedures to be followed in the issuance and execution of warrants relating to the offices and files of lawyers and others who claim statutory privileges. Subdivisions (c) and (d) thereof currently read: "(c) Notwithstanding subdivision (a) or (b), no search warrant shall issue for any documentary evidence in the possession or under the control of any person, who is a lawyer . . ., and who is not reasonably suspected of engaging or having engaged in criminal activity

related to the documentary evidence for which a warrant is requested unless the following procedure has been complied with:

"(1) At the time of the issuance of such warrant the court shall appoint a special master in accordance with subdivision (d) to accompany the person or persons who will serve the warrant. Upon service of the warrant, the special master shall inform the party served of the specific items being sought and that the party shall have the opportunity to provide the items requested. If the party,...fails to provide the items requested, the special master shall conduct a search for such items in the areas indicated in the search warrant.

"(2) If the party who has been served states that an item or items should not be disclosed, they shall be sealed by the special master and taken to court for a hearing.

"At such hearing the party searched shall be entitled to raise any issues which may be raised pursuant to Section 1538.5 as well as a claim that the item or items are privileged, as provided by law. Any such hearing shall be held in the superior court....Such hearing shall be held within three days of the service of the warrant unless the court makes a finding that such expedited hearing is impracticable. In that case the matter shall be heard at the earliest possible time.

". . . . . . . . . . . . . .

"(d) As used in this section, a 'special master' is an attorney who is a member in good standing of the California State Bar and who has been selected from a list of such attorneys which is maintained by the State Bar particularly for the purposes of conducting the searches described in this section...."

Penal Code section 1525 was also amended to indicate that the application for a search warrant should set forth "that the place to be searched is in the possession or under the control of an attorney,..."

The above set forth amendments to the Penal Code necessitated a long overdue modification of Evidence Code section 915, subdivision (a) which heretofore had created the anomalous situation of an otherwise trusted judge not being allowed to require disclosure of actual documents claimed subject to the attorney-client privilege in order to rule on the claim of privilege. (*Romo* v. *Southern Pac. Transportation Co.*

(1977) 71 Cal.App.3d 909, 922 [139 Cal.Rptr. 787].)[2] Section 915, subdivision (a) has now been amended to provide "that in any hearing conducted pursuant to subdivision (c) of Section 1524 of the Penal Code in which a claim of privilege is made and the court determines that there is no other feasible means to rule on the validity of such claim other than to require disclosure, the court shall proceed in accordance with subdivision (b)."

Subdivision (b) provides for an *in camera* proceeding with only the additional person authorized to claim the privilege present, and prevents the judge from ever disclosing privileged information without the consent of the person authorized to permit disclosure.

■ The enactment of these amendments adds credence to what appears to be settled law that search warrants directed against attorneys' files in their offices are not per se "unreasonable" as violative of the Fourth Amendment. In *Andresen v. Maryland* (1976) 427 U.S. 463 [49 L.Ed.2d 627, 96 S.Ct. 2737], the United States Supreme Court upheld the conviction of a lawyer albeit charged with fraud, based on incriminating documents seized from the files of his law offices as against Andresen's claim of violation of the Fifth Amendment proscription that no person shall be compelled in any criminal case to be a witness against himself.

In *Burrows v. Superior Court* (1974) 13 Cal.3d 238, 248 [118 Cal.Rptr. 166, 529 P.2d 590], the California Supreme Court held that evidence seized from Attorney Burrows' law office pursuant to a warrant should have been suppressed (Pen. Code, § 1538.5), not because a search warrant to search the law office of an attorney was invalid per se, but because it was too broad.

The mere fact that in *Andresen, supra,* and *Burrows, supra,* both attorneys were charged with crimes creates a distinction without a difference when we are dealing with considerations affecting privileged material. An attorney suspected of criminal activity should have the same concerns about the confidentiality of files containing privileged matter as an innocent third party attorney who allegedly possesses and controls files containing evidence of criminal conduct.

---

[2]However, this statutory prohibition does not preclude judicial determination of the *facts* asserted as the basis for an attorney-client privilege. (*People* ex rel. *Dept. of Public Works* v. *Glen Arms Estate, Inc.* (1964) 230 Cal.App.2d 841, 855-856 [41 Cal.Rptr. 303].)

However, we take note of a recent, well-reasoned Minnesota Supreme Court case wherein the court, in granting a writ of prohibition, held a search warrant based on probable cause for a noncharged attorney's office unreasonable, ". . . in the light of the attorney-client privilege, client confidentiality, the work product doctrine, and the criminal defendant's constitutional right to counsel." The court recommended that law enforcement officers proceed by subpoena duces tecum in seeking documents held by an attorney. (*O'Connor v. Johnson* (1979) — Minn. — [287 N.W.2d 400].

The Minnesota court distinguished the leading case of *Zurcher v. Stanford Daily* (1978) 436 U.S. 547 [56 L.Ed.2d 525, 98 S.Ct. 1970], on the ground that in *Zurcher*, the constitutionally permitted search of the third party newspaper office was acceptable in that the newspaper had announced a policy of destroying relevant evidence that might aid in prosecution of demonstrators.

The *Zurcher* court in upholding a warrant to search university newspaper offices for incriminating photographs against the claim of privilege, enunciated that even where a search warrant is issued based on probable cause, "[t]his is not to question that 'reasonableness' is the overriding test of compliance with the Fourth Amendment." (*Zurcher, supra,* 436 U.S. at p. 559 [56 L.Ed.2d at p. 538].) We agree that "reasonableness" depends on the circumstances in a given case. (*Id.,* at p. 570 [56 L.Ed.2d at p. 544] (conc. opn. of Powell, J.).)

Any conflict that may exist in the case law seems resolved at least in California by the aforementioned statutory amendments—for the time being. The new legislation answers most of the concerns expressed by the *O'Connor* court, and raised by the briefs submitted herein, with the possible exception of "before the fact" review for overbreadth, or a prewarrant adversary hearing requested and rejected in a First Amendment obscenity case. (*Monica Theatre v. Municipal Court* (1970) 9 Cal.App.3d 1, 10, fn. 9 [88 Cal.Rptr. 71].) But the crucial point of protecting allegedly privileged material is covered procedurally, irrespective of a claim of the warrant being too broad on its face. That contention can be raised in a Penal Code section 1538.5 hearing. (See *Burrows, supra,* 13 Cal.3d 238.)

We need not discuss whether the warrant herein violated the principles of "reasonableness" or particularity laid down in *Burrows, supra,* 13 Cal.3d at pages 249-250, wherein the court found "the direction to seize 'any file or documents' relating to the Millers...too broad to comport with constitutional requirements," and *Andresen, supra,* 427 U.S. at page 480 [49 L.Ed.2d at p. 642], which allowed the search of a suspect attorney's office while condemning "general, exploratory rummaging." However, we do make the observation that the language used in the warrant appears similar to that criticized by the cases.

If the AG has a continuing interest in pursuing the investigation involved herein by means of search warrants of attorneys' offices, he must apply for the issuance of other warrants, this time in contemplation of the new legislation governing such searches. At this point, we do not presume to pass on the constitutionality of the new statutory clauses, nor for that matter, predict whether they will be effective in accomplishing the goals intended. It is not unlikely that these issues will be before the court again, but by then, the sections will have been applied, tested and evaluated in a particular fact situation, and can appropriately be spoken to constitutionally.

Nor do we address the trial court's jurisdiction in the first instance in granting the injunctive relief, or whether the AG or KLGBS had adequate legal remedies. These issues are in fact rendered moot by virtue of the lapsed search warrant, the new legislation mandating the procedures to be used in this type of situation, and by our ruling herein.

The petition is granted. Let a peremptory writ of mandate issue commanding the trial court to set aside and vacate its order of April 13, 1979, in case number C277 290 in the Los Angeles County Superior Court, enjoining the AG and his agents from executing a search warrant for the search of the files and records in the law offices of KLGBS, and from seeking issuance of any other search warrant, and from conducting any search of said location.

Cobey, J., and Potter, J., concurred.